UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD B. THOMPSON,

         Petitioner,       Case No. 2:16-cv-13998
                            Hon. Victoria A. Roberts
v.

BONITA HOFFNER,
         Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Ronald B. Thompson was convicted after a jury trial in the Wayne Circuit Court of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a), and possession of a firearm during the commission of felony, MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to life imprisonment for the murder conviction, and a mandatory 2-year consecutive term for the firearm conviction.

The petition raises twelve claims: (1) the trial court erred in allowing admission of a note written by the victim naming his shooter, (2) insufficient evidence was presented at the preliminary examination to warrant a bind-over for trial, (3) the trial court erroneously admitted the opinion testimony of the pathologist regarding the victim's labored breathing during a 9-1-1 call, (4) insufficient evidence was admitted at trial to sustain Petitioner's convictions, (5) the state court erroneously failed to address the merits of Petitioner's post-conviction review claims where appellate counsel was ineffective for failing to raise those claims on direct appeal, (6) the police failed to comply with the Stored Communications Act ("SCA") with respect to Petitioner's cell phone records, (7) the police failed to comply with the SCA with respect to cell tower location

evidence, (8) admission of the note naming Petitioner as the shooter violated the Confrontation Clause, (9) the trial court erroneously admitted hearsay testimony regarding the autopsy report, (10) the trial court erroneously instructed the jury on the element of causation, (11) Petitioner was denied the effective assistance of trial counsel, and (12) Petitioner was denied the effective assistance of appellate counsel.

The Court finds that Petitioner's claims are without merit or barred by his state court procedural defaults. Therefore, the petition will be denied. The Court will also deny a certificate of appealability, but it will grant permission to appeal in forma pauperis.

**I. Background**

At Petitioner's trial, cell phone records were admitted indicating that at 12:42 a.m. on March 26, 2010, the victim, Dennis VanHulle, received a phone call from Petitioner's cell phone. Eight minutes later, at 12:50 a.m., the victim called 9-1-1 for help. Over the course of the nearly ten-minute 9-1-1 call, the victim managed to tell the operator that he was shot and repeatedly asked for help, but he did not name the shooter when asked.

Detroit Police Officers Jeffrey Elgert and Detrick Mott testified that on that date they responded to a shooting at a duplex located on a residential street in Detroit. The officers arrived around 1:00 a.m., about ten minutes after the victim called 9-1-1. The officers were met at the front door by the victim, who pointed to a gunshot wound in the middle of his throat. The officers asked VanHulle if he knew who the shooter was, and VanHulle retrieved a piece of paper and wrote down the name he knew Petitioner by, "Ron Hilgendorf." VanHulle could not speak, but he tried to indicate what happened by making gestures with his hands suggesting that he was shot when he answered his front door. The officers tried to keep the victim calm until the ambulance arrived. The victim died in the hospital several days later.

Kevin VanHulle, the victim's brother, testified that the victim was a member of "The Highwaymen" motorcycle club, but he was not an active member at the time of his death. Kevin indicated that Petitioner and the victim were best friends despite the fact that Petitioner was a member of the rival "The Liberty Riders" motorcycle club. Kevin did not hear from Petitioner from the date Dennis was shot, and Petitioner did not attend the funeral. Tara Miller, the victim's daughter, likewise testified that she did not recall seeing or hearing from Petitioner while her father was in the hospital or at the funeral.

Sara Nall, the victim's girlfriend, testified that she lived with the victim for five months prior to his death. Nall testified that the victim and Petitioner were very close, and the victim referred to Petitioner as his brother. Nall testified that two weeks before the shooting, Petitioner's wife came over to the house in the middle of night, covered in mud. She said she Petitioner fought with her, and Petitioner accused her of having an affair with the victim.

Detroit Police Officer Michael McGinnis testified that he reviewed the cell phone records for Petitioner and the victim in order to create a map showing where they were in the time period of the crime. McGinnis testified that just prior to the shooting, Petitioner's cell phone was used in an area whose cell phone tower was within the region of the victim's house. Petitioner's cell phone was used again just after the shooting through a cell phone tower just to the north of the victim's house.

Dr. John Somerset, an assistant medical examiner with the Wayne County Medical Examiner's office, testified regarding the autopsy conducted by Dr. Cheryl Loewe, who was retired at the time of trial. Dr. Somerset testified that the victim was shot in the neck, and the wound involved his trachea and windpipe. Dr. Somerset indicated that the cause of death was classified by Dr. Loewe as a single gunshot wound to the neck complicated by adult respiratory distress syndrome

3

and sepsis, and the manner of death was homicide. Dr. Somerset gave opinion testimony regarding Petitioner's labored breathing and difficulty speaking during the 9-1-1 call.

Aaron Hilgendorf testified for the defense that he was Petitioner's brother. He testified that Petitioner did not use the Hilgendorf name since childhood. He did not know of anyone who referred to Petitioner by that name. Evidence was admitted that years before the shooting the FBI warned the victim that a "hit" was put out on him.

Following arguments and instructions, the jury found Petitioner guilty of the offenses indicated above, and Petitioner was sentenced to life imprisonment plus two-years.

Petitioner filed an appeal of right. His appellate counsel filed a brief on appeal, raising what now form his first four habeas claims. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Thompson*, 2013 WL 276042 (Mich. Ct. App. Jan. 24, 2013). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Thompson*, 834 N.W.2d 504 (Mich. July 30, 2013) (Table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising what now form his fifth through twelfth habeas claims. The trial court issued an opinion and order denying the motion for relief from judgment, finding in part that Petitioner "has not shown 'good cause' under MCR 6.508(D)(3), nor has he proven actual prejudice." Dkt. 6-19, at 8.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied the application because "the defendant alleges grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and has not established that good cause should be

waived. MCR 6.508(D)(3)(a)." *People v. Thompson*, No. 328944 ( Mich. Ct. App. Nov. 19, 2015). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but it was denied with citation to Rule 6.508(D). *People v. Thompson*, 886 N.W.2d 421 (Mich. Oct. 26, 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

5

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Admission of Victim's Dying Declaration

Petitioner's first claim concerns admission of the note written by the victim indicating that Petitioner was the man who shot him. Petitioner argues that prior to writing the name "Ron Hilgendorf" at the direction of the police officers, the victim spent about ten minutes on the phone with the 9-1-1 operator, and though the operator asked him multiple times who shot him, the victim did not name the shooter. Petitioner asserts that at no time during the conversation with the 9-1-1 operator did the victim indicate a belief that he was dying. On direct review, Petitioner argued that the trial court erred under Michigan Rule of Evidence 804(b)(2) admitting the note as a dying declaration. During state post-conviction review, Petitioner asserted that admission of the note violated his rights under the Sixth Amendment's Confrontation Clause.

First, the argument that the trial court erred under Rule 804(b)(2) by admitting the victim's note does not present a cognizable claim on federal habeas review. The alleged failure to comply with state law does not amount to an actionable claim on habeas review. See, e.g., *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The Court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In any event, the Michigan Court of Appeals decision that the note was properly admitted under Rule 804(b)(2) was reasonable. After reciting the applicable standard for the admission of a dying declaration under the Michigan Rules of Evidence, the state court rejected Petitioner's claim

as follows:

> After reviewing the record, we find that the trial court could reasonably infer from the circumstances surrounding the making of the statement that the victim clearly believed his death was imminent. See id. The "apparent fatal quality" of the victim's gunshot wound is evident given its nature and location in the middle of his throat. Id. This is especially so in light of the victim's progressively worsening condition over the duration of the 911 call, as evidenced by his increased difficulty speaking and breathing, and also his heightened desperation for assistance, as indicated by the increased frequency of his pleas for help, his apparent concern if and when help would arrive, and the 911 operator's comments clearly attempting to calm him down.[1]
>
> From these circumstances surrounding the statement, the court could reasonably infer that the victim feared for his life and believed his death was imminent when he identified defendant as the assailant, despite his apparent mobility and consciousness and the lack of "gushing" blood from his throat. See MRE 804(b)(2); *Stamper*, 480 Mich. at 3-4. Additionally, although there was no evidence indicating that the victim was actually informed of his critical condition or that he made any specific statements signifying his belief that his death was imminent, "it is not necessary for the declarant to have actually stated that he knew he was dying in order for the statement to be admissible as a dying declaration." *Siler*, 171 Mich. App. at 251. Further, the victim's failure to identify defendant as the assailant during the 911 call does not necessarily indicate a belief that his death was not imminent. To the contrary, it was also reasonable to infer from the victim's numerous, continual pleas for help during the 911 call that he was solely focused on obtaining assistance because he feared for his life. Accordingly, we find no error in the trial court's ruling that the victim's handwritten statement identifying defendant as the assailant was admissible under MRE 804(b)(2) as a dying declaration and no abuse of discretion in the court's admission of the statement as substantive evidence.
>
> \* \* \*
>
> [1] Testimony by a medical examiner who listened to the 911 call indicated that in the beginning of the call the victim could not speak a sentence, his words were in "short bursts," he had to pause to force more air through, and his breathing was labored; after four minutes, the victim's labored breathing and bursts were more pronounced; and after nine minutes, as the victim became weaker, it became "a lot more difficult" for him to speak and he had "trouble" with labored breathing. The court in considering defendant's motion to suppress the statement also reviewed the 911 tapes and found it "very clear" that the victim found it "very difficult" to breathe.

*Thompson*, 2013 WL 276042, *1-2.

Petitioner also asserts that the admission of the note violated his rights under the Confrontation Clause. The Confrontation Clause provides: "In all criminal prosecutions, the accused

7

shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Among other things, the Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In *Crawford*, the Supreme Court noted that the dying declaration rule provides an historical exception to the Confrontation Clause's bar on testimonial hearsay. After explaining that none of the Court's prior cases involving other hearsay exceptions resulted in admission of testimonial hearsay, the Court observed:

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is sui generis.

*Crawford*, 541 U.S. at 56 n.6 (citations omitted).

In *Michigan v. Bryant*, 562 U.S. 344, 351, n. 1 (2011), the Court declined to resolve whether testimonial dying declarations are admissible as an exception to the Confrontation Clause. The Sixth Circuit subsequently held in *Walker v. Harry*, 462 F. App'x. 543, 545 (6th Cir. 2012), that the Supreme Court has "refrained from ruling on the status of dying declarations under the Confrontation Clause." *Id*. at 545. Accordingly, even if the victim's note constitutes testimonial hearsay, the statements admission under the dying declaration rule did not implicate Petitioner's Confrontation Clause rights as set-forth by clearly established Supreme Court law. Petitioner's first and eighth claims are therefore without merit.

B. Sufficiency of Evidence at Preliminary Examination

Petitioner's second habeas claim asserts that there was insufficient evidence presented by the prosecution at the preliminary examination to bind Petitioner over for trial. Petitioner asserts that

8

the only evidence offered at the examination amounted to the inadmissible note, unconstitutionally obtained cell-phone records, and the doubtful testimony that Petitioner's wife engaged in an affair with the victim.

Under Michigan law the preliminary examination is statutory procedure used to determine whether there is probable cause that the accused committed the charged crime. See MICH. COMP. LAWS §§ 766.1-766.18. There is no federal constitutional requirement for this type of pre-trial probable cause determination. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[A] judicial hearing is not prerequisite to prosecution by information. . . . [A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."); *Dillard v. Bomar*, 342 F.2d 789, 790-91 (6th Cir. 1965) ("We do not find that the Supreme Court has ever held that an accused has a constitutional right to a preliminary hearing. On the contrary, we construe the [Supreme Court's] opinions . . . as saying that an accused has no such constitutional right. This Court has held that no such constitutional right exists."). Accordingly, Petitioner's claim that there was an insufficient evidence presented to bind him over for trial is not cognizable on habeas review.

C. Opinion Evidence Regarding Victim's Labored Breathing

Petitioner's third claim asserts that the trial court erred in allowing the medical examiner to give opinion testimony regarding the victim's physical condition during the 9-1-1 call. Petitioner asserts that the evidence in question went beyond the witness's area of expertise.

After discussing the admissibility of expert witness opinion testimony under Michigan Rule of Evidence 702 and 703, the Michigan Court of Appeals rejected the claim as follows:

> The trial court qualified Dr. Somerset as a forensic pathologist; thus, he could

properly offer an opinion on the cause and manner of the victim's death. See *Unger*, 278 Mich. App. at 251-252. During his testimony at issue, Dr. Somerset explained how the gunshot wound to the victim's throat physically impeded his ability to breathe and speak. This testimony concerned the victim's wounds and suffering, matters within the expertise of a forensic pathologist. *Id.* at 252. The effect of the gunshot wound on the victim's ability to breathe was also related to the cause of death, i.e., "respiratory distress syndrome," which was within a forensic pathologist's area of expertise. *Id.* at 251-252. Regardless, in light of the strong evidence establishing defendant's guilt, we cannot say that the admission of Dr. Somerset's testimony concerning the effect of the gunshot wound on the victim's ability to breathe was outcome determinative. See *Carines*, 460 Mich. at 763-764.

We disagree with defendant's contention that, without the victim's medical records in evidence, there were no facts to form the basis of Dr. Somerset's opinion that the blood from the wound aspirated into the victim's lungs causing him to experience difficulty breathing. Defendant correctly asserts that MRE 703 requires that the "facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence." Here, the evidence contained actual facts to establish that the victim was, in fact, bleeding from the gunshot wound to his throat. The officer who responded to the 911 call testified that every time the victim breathed or attempted to speak blood would "dribble out" of the wound, and the victim's girlfriend detailed the spots of blood throughout the victim's home. In accordance with MRE 703, from these facts Dr. Somerset could opine, in light of his general training and experience as a medical doctor and experience with injuries to the throat, that the victim's impeded breathing was caused by blood aspirating in his lungs. See *People v. Yost*, 278 Mich. App. 341, 395 (2008).

We likewise find no merit to defendant's claim that defense counsel was ineffective for failing to object to Dr. Somerset's testimony. Because Dr. Somerset's expert testimony concerning the victim's wound was properly allowed under MRE 702, any objection by defense counsel to its admission would have been futile; therefore, defense counsel could not have been ineffective on that basis. See *People v. Thomas*, 260 Mich. App. 450, 457 (2004). Moreover, in light of the strong evidence establishing defendant's guilt, defendant failed to establish a reasonable probability that the jury would not have convicted him if the challenged testimony had been excluded. See *Unger*, 278 Mich. App. at 242. Accordingly, defendant has not established his claim of ineffective assistance of counsel.

*Thompson*, 2013 WL 276042, *3-4.

This decision was reasonable. But in any event, habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.

1988)). The Michigan Court of Appeals found that the medical examiner's testimony regarding the aspiration of blood by the victim and his labored breathing was properly admitted under the Michigan Rules of Evidence. Contrary to Petitioner's argument these matters pertained to cause of death and therefore fell within the witness's area of expertise. This Court will not second-guess the state court's application of its own evidentiary rules.

Nor was Petitioner's due process right to a fundamentally fair trial implicated by the introduction of this evidence. Petitioner has not demonstrated that the evidence was erroneously admitted under state law, let alone that an error occurred that was so "egregious that it results in a denial of fundamental fairness." See *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner's third claim is therefore without merit.

D. Sufficiency of Evidence

Petitioner's fourth claim challenges the sufficiency of the evidence presented at trial to sustain his conviction. He argues the prosecutor's case hinged on phone records and conjecture, and that while the records showed that Petitioner was in the general vicinity at the time of the crime, there was no definitive proof that he was at the victim's house at the time of the shooting. Petitioner relies on the testimony of the victim's brother who testified that Petitioner lived only about a quarter-mile away from the victim's house at the time of the shooting, rendering the cell-phone tower evidence irrelevant. See Dkt. 6-12, at 46.

After reciting the applicable constitutional standard for determining the constitutional sufficiency of the evidence, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> [T]here was sufficient evidence from which the jury could reasonably infer that the killing was intentional, including testimony regarding the life-threatening nature and location of the wound, testimony regarding the nonverbal gestures that the victim made to the responding police officers indicating that he opened the door and that the assailant pointed a gun at his throat and shot him, and the medical examiner's

11

characterization of the manner of death as homicide. There was also sufficient evidence linking defendant directly to the shooting from which the jury could reasonably conclude that defendant was responsible for the homicide beyond a reasonable doubt. See *Ortiz*, 249 Mich. App. at 302. More specifically, the victim's handwritten statement identifying defendant as the assailant, properly admitted as a dying declaration, demonstrated that defendant committed the homicide. Furthermore, additional evidence corroborated the identification evidence. Specifically, a forensic cellular-telephone analysis led to the reasonable inference that defendant called the victim minutes before the shooting, went to his home and shot him, and then fled the crime scene, which supports an inference of "consciousness of guilt." See *Unger*, 278 Mich. App. at 226. Further, defendant's noticeable absence during the victim's two week hospital stay and his visitation and funeral services in light of the overwhelming testimony about the extremely close relationship between defendant and the victim leads to the reasonable inference that defendant was avoiding the hospital and funeral out of consciousness of guilt.

We also conclude that the evidence, viewed in the light most favorable to the prosecution, supports a reasonable inference that defendant premeditated and deliberated to kill the victim. . . . In this case, testimony indicated that, merely two weeks before the shooting, defendant accused his wife of sleeping with the victim, which provided a clear motive for defendant to kill the victim. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant," *Unger*, 278 Mich. App. at 223, and supports an inference of premeditation and deliberation, *People v. Youngblood*, 165 Mich. App. 381, 387 (1988); *People v. Waters*, 118 Mich. App. 176, 186-187 (1982). Further, viewing the cellular telephone records in the light most favorable to the prosecution, the jury could reasonably infer that defendant called the victim in advance in an attempt to determine if he was home and then proceeded to go to his home with a deadly weapon to kill him, which reasonably points to the existence of a premeditated plan. See *Youngblood*, 165 Mich. App. at 387 (premeditation and deliberation may be inferred from the circumstances surrounding the killing). There was sufficient time between the time defendant called the victim and the time he arrived at the victim's home for defendant to take a "second look." *Plummer*, 229 Mich. App. at 300. The victim's hand gestures to the responding officers, indicating that when he answered the door the assailant pointed a gun at his throat and shot him, and the lack of any forced entry or "sudden affray" in the victim's home, to indicate that the shooting occurred suddenly or was impulsive, support an inference that defendant acted with premeditation, especially in light of the existence of a motive to kill the victim. *People v. Tilley*, 405 Mich. 38, 44-45 (1979); see also *People v. Morrin*, 31 Mich. App. 301, 331 (1971).

Accordingly, we conclude that the evidence at trial, when viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to reasonably conclude beyond a reasonable doubt that defendant committed first-degree murder.

*Thompson*, 2013 WL 276042, *5-6.

This decision did not unreasonably apply clearly established Supreme Court law. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency of the evidence review is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 334. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19.

The Court may not vacate a state court decision rejecting a sufficiency of the evidence claim merely because it disagrees with the decision. Instead, it may grant habeas relief only if the state court decision was an objectively unreasonable application of *Jackson*. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). For the Court, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Viewed most favorably to the prosecution, the evidence indicated that minutes before the shooting, Petitioner called the victim on his cell phone. Then within minutes after the shooting, the victim indicated that Petitioner was the person who shot him by writing his assumed name on a piece of paper. The jury was free to accept as true the representations of the police officers regarding the dire circumstances under which the victim identified Petitioner as the shooter. The jury was also free to infer consciousness of guilt from Petitioner's absence at the hospital and the funeral where

13

the evidence indicated that the two were best friends. At a bare minimum, the state appellate court's rejection of this claim in light of the evidence presented at trial did not fall below the threshold of bare rationality. Petitioner's fourth claim is therefore without merit.

E. Procedural Default

Petitioner's remaining claims were presented to the state courts in Petitioner's motion for relief from judgment and the appeal that followed it. The trial court denied Petitioner's motion in part because it found that Petitioner failed to demonstrate good cause for failing to raise the claims on direct appeal. The Michigan Court of Appeals then denied relief because "the defendant alleges grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and has not established that good cause should be waived. MCR 6.508(D)(3)(a)." *People v. Thompson*, No. 328944 ( Mich. Ct. App. Nov. 19, 2015).

A federal habeas court ordinarily will not review a petitioner's claims if he "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To determine whether the state court rejected a petitioner's claim on procedural grounds, a court looks to 'the last reasoned state court opinion to determine the basis for the state court's rejection of the petitioner's claim.'" *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012) (quoting *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)). Furthermore, the court must presume that, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Guilmette*, 624 F.3d at 291-92 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Here, the Michigan Court of Appeals' order denying Petitioner leave to appeal was the last reasoned state court opinion to reject Petitioner's post-conviction claims. The state appellate court

rejected the claims under Michigan Court Rule 6.508(D)(3), "which is an independent and adequate state ground sufficient for procedural default that required [Petitioner] to raise these claims during his direct appeal." *Amos*, 683 F.3d at 733.

Where, as here, a petitioner has procedurally defaulted his claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner's fifth and twelfth habeas claims assert that his appellate counsel was ineffective for failing to raise his post-conviction review claims during his appeal of right, and they constitute his argument for why cause exists for review of his defaulted claims. Appellate counsel, however, is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Where appellate counsel "presents one argument on appeal rather than another . . . the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present'" to establish ineffective assistance of counsel. *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Here, appellate counsel was not ineffective during Petitioner's direct appeal because the claims Petitioner raised on post-conviction review are not "clearly stronger" than the ones raised by appellate counsel on direct review. Petitioner therefore cannot demonstrate cause to excuse his default.

1. Violation of the Stored Communications Act

Petitioner's sixth habeas claim asserts that the state magistrate judge ordering production of Petitioner's cell phone records violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., because the government did not articulate specific facts showing that there was reasonable grounds to believe that the contents of the records were relevant to an ongoing criminal investigation. Petitioner's related seventh claim asserts that the SCA was violated by disclosure of cell phone tower location information. Even if it were true that the government violated the SCA, however, such a violation does not provide a basis for suppressing the records. The SCA provides for civil damages, see 18 U.S.C. § 2702, and criminal punishment, see 18 U.S.C. § 2701(b), but specifically excludes other potential remedies. see 18 U.S.C. § 2708. Petitioner's omitted SCA claims are therefore not "clearly stronger" than the ones raised by appellate counsel on direct review, and appellate counsel's failure to raise them did not constitute ineffective assistance of counsel.

2. Confrontation Clause

Petitioner's eighth claim concerns the admission of the victim's note, raising the claim under the Confrontation Clause as opposed to the Michigan Rules of Evidence. But as discussed above, the Confrontation Clause is not implicated by the admission of a dying declaration. This claim is likewise not "clearly stronger" than the ones raised by appellate counsel on direct appeal.

3. Admission of Contents of Autopsy Report

Petitioner's ninth claim asserts that the trial court erroneously admitted testimony regarding the victim's autopsy report on Confrontation Clause grounds because the testifying medical examiner was not the person who performed the autopsy. This claim is also not clearly stronger than the ones raised by appellate counsel on direct review. There is no clearly established Supreme Court precedent holding that autopsy reports are testimonial in nature, and thus subject to the

Confrontation Clause's prohibition against the admission of testimonial hearsay. *Mitchell v. Kelly*, 520 F. App'x 329, 331 (6th Cir. 2013) ("[T]he decision of the Ohio Court of Appeals was not an unreasonable application of *Crawford* given the lack of Supreme Court precedent establishing that an autopsy report is testimonial."); see also *Cato v. Prelesnik*, No. 1:08-cv-1146, 2012 U.S. Dist. LEXIS 99909, 2012 WL 2952183 at *3 (W.D. Mich. July 18, 2012). Appellate counsel was not ineffective for failing to raise this claim on direct review.

### 4. Jury Instruction on Causation

Petitioner's tenth claim asserts that the jury was erroneously instructed on the element of causation. The trial court instructed the jury that in order to find Petitioner guilty, it was required to find that "the defendant caused the death of Dennis VanHulle. That is that Dennis VanHulle died as a result of a gunshot wound." Dkt. 6-14, at 68. Petitioner asserts that in light of the working of the second sentence, the jury might have believed that it was required to find Petitioner guilty if it found that VanHulle died as a result of a gunshot wound whether or not Petitioner was the one who shot him. This strained interpretation of the instruction does not present a clearly stronger claim than the ones presented by appellate counsel on direct appeal. In the immediately preceding sentence the trial court instructed that jury that it was required to determine whether "the defendant caused the death of Dennis VanHulle." It is not enough that there is some "slight possibility" that the jury misapplied the instruction. *Weeks v. Angelone*, 528 U.S. 225, 236 (2000). Appellate counsel was not ineffective for failing to raise this claim on direct appeal.

### 5. Ineffective Assistance of Trial Counsel

Petitioner's eleventh claim asserts that his trial counsel was ineffective for failing to preserve his other claims at trial. But because the underlying claims are without merit for the reasons already discussed, neither trial nor appellate counsel were ineffective for failing to raise the claims. *Greer*

*v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner also asserts that his trial counsel was ineffective for failing to investigate and present a defense that a third party murdered the victim. Petitioner proffered no evidence in the state courts and he proffers no evidence here in support of such a defense. Nor does Petitioner proffer any evidence that leads existed regarding such a defense that went ignored by defense counsel. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013)(quoting *Strickland*, 466 U.S. at 689). Appellate counsel was not ineffective for omitting this baseless claim.

Accordingly, Petitioner's state post-conviction review claims are barred from review by Petitioner's state court procedural default and Petitioner's failure to demonstrate cause to excuse the default. As all of Petitioner's claim are without merit or barred from review, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner is not entitled to habeas relief with respect to any of his claims, and so a certificate will be denied.

The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

                                                S/Victoria A. Roberts
                                                Honorable Victoria A. Roberts
Dated: May 15, 2018                           United States District Judge